UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALICE E. BARTHOLOMEW,

    Plaintiff(s),

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,

    Defendant(s).

NO. C07-1156MJP

ORDER ON DEFENDANTS' RULE 52 MOTION FOR JUDGMENT, OR, IN THE ALTERNATIVE, RULE 56 MOTION FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendants' Rule 52 Motion for Judgment, or, in the Alternative, Rule 56 Motion for Summary Judgment (Dkt. No. 23)

2. Plaintiff's Response in Opposition to Defendants' Motion for Rule 52 Judgment or for Summary Judgment per Rule 56 (Dkt. No. 49)

3. Defendants' Reply in Support of Rule 52 Motion for Judgment, or, in the Alternative, Rule 56 Motion for Summary Judgment (Dkt. No. 51)

and all attached exhibits and declarations, makes the following ruling:

IT IS ORDERED that the Motion for Rule 52 Judgment is DENIED.

IT IS FURTHER ORDERED that the Motion for Rule 56 Summary Judgment is GRANTED and the matter is DISMISSED with prejudice.

**ORD ON MTN FOR SUMMARY JMT - 1**

## Background

Plaintiff worked for a company called Pyxis Corporation as a Systems Applications Specialist from October 25, 1993 to October 24, 1995. Administrative Record ("AR"), 01877-1878.[1] As a Pyxis employee, she was covered under the Group Benefit Plan of Defendant Cardinal Health, Inc. ("the LTD Plan") program, issued by Defendant Unum Life Insurance Company of America ("Unum"). AR 00967-982. Plaintiff does not dispute that the LTD Plan grants discretionary authority to Unum to determine benefit eligibility and interpret policy terms. AR 00970. The LTD Plan is an "own occupation/any occupation" plan – a claimant is initially qualified for disability if unable to perform his/her own job. "Own occupation" disability benefits are paid for 60 months, following which complete disability is found only if the claimant cannot perform *any* occupation for which he/she is qualified. AR 00974.

Plaintiff first claimed disability in January 1996, asserting Chronic Fatigue Syndrome ("CFS") as her qualifying condition. The disability claim was approved and benefits paid from January 23, 1996 through June 19, 2001 under the "own occupation" test. AR 00910, 01646-1647. During this period, Plaintiff was denied SSA disability benefits on the grounds that her condition was not "severe" enough to prohibit her from working. AR 01966-1969. That determination was upheld on Reconsideration Determination (AR 01352); on appeal, an administrative law judge ("ALJ") affirmed the determination and found Plaintiff not disabled. AR 01349-1358. The testimony of Plaintiff's treating physicians was discounted for lack of medical evidence, and Plaintiff herself was found not to be a credible witness. AR 01353-1358. Her request for reconsideration of the ALJ decision was denied. AR 01922-1923.

---

[1] All references to the factual and procedural background of this case are from the extensive Administrative Record, unless otherwise noted.

**ORD ON MTN FOR SUMMARY JMT - 2**

From 1997 through 1999, there is evidence (tax records, pay stubs, testimony, Plaintiff's own statements) that Plaintiff was working part-time, with her hours apparently increasing as time went on. AR 01257-1261, 01270-1295, 01314-1315, 01341, 01465, 02069.

As of January 2001 (the expiration of the 60 months of "own occupation" disability), Plaintiff had to qualify for disability benefits under the "any occupation" test. Defendants cite extensively to the Administrative Record in support of their conclusion that, under this new definition, she was not disabled. Def Mtn., pp. 8 - 13. In addition to reviewing the available medical information, Defendant sent Plaintiff to a 2-day Functional Capacities Evaluation ("FCE") and a Transferable Skills Analysis ("TSA"), as well as referring her file to a vocational consultant. This entire evaluation process took five months, during which time Defendant continued to pay Plaintiff disability benefits.

On June 21, 2001, Defendant decided to terminate Plaintiff's benefits, and advised her of that decision and of her right to appeal. AR 01017-1019. Plaintiff elected to appeal, and on September 11, 2001 submitted a 10-page letter challenging Defendant's findings, as well nearly 500 pages of additional medical documents, claimant information and articles on CFS and fibromyalgia. AR 00364-848. Further supplemental material was supplied on October 23, 2001. Plaintiff had been in an auto accident in August 2000, and among the materials she submitted as part of her appeal were two letters from a psychologist (Dr. Reinking): the first (dated September 27, 2000) stated that she exhibited "histrionic personality traits" (AR 00675-677); the second (dated September 10, 2001) ascribed to the auto accident "an array of new psychological and behavioral problems," including PTSD, Major Depressive Disorder and a Neurocognitive Disorder. AR 00375-380. Although Dr. Reinking was also of the opinion that, psychologically, Plaintiff was unable to work effectively more than 2 hours a day, Defendant notes that he provided no clinical test results of his own to support that conclusion.

In response to Plaintiff's submissions, Defendant sent her file (including her appeal materials) to a Registered Nurse, a doctor and a psychiatrist. The doctor concluded that she was capable of full-

**ORD ON MTN FOR SUMMARY JMT - 3**

time sedentary or part-time light capacity work (AR 00869–870); the psychiatrist found no support in the record for a finding of disability by virtue of major mental disorder. AR 00865. On February 1, 2002, Defendant upheld its denial of her benefits. AR 00994-997. Defendant permitted Plaintiff a second appeal, during which she submitted additional medical records (AR 02382-2388, 02464-2465, 02546); on September 11, 2002, Defendant affirmed its previous denial. AR 02580-2581.

In November 2004, Defendant entered into a Regulatory Settlement Agreement ("RSA") with the Department of Labor. Pltf. Ex. M. Pursuant to that agreement, Defendant offered Plaintiff a reassessment of her denied claim, which she accepted. On July 28, 2006, Plaintiff submitted a 28-page letter as well as hundreds of pages of additional medical information, including reports from a number of health professionals. AR 02785-4248. Defendant then obtained three medical reviews of the material in the AR from another Registered Nurse, a doctor in occupational medicine and a neuropsychologist. On February 26, 2007, Defendant completed its reassessment and again determined that physical impairment had not been established. However, it was determined that Plaintiff had established a case for psychiatric disability and she was awarded an additional 24 months of benefits (the maximum allowable for psychological disability under the LTD Plan) plus interest. AR 02307-2310.

Plaintiff appeals from the denial of benefits based on a claim of medical/physical disability. Complaint, Dkt. No. 1.

**Discussion**

Rule 52 Motion

Neither the moving party nor the responding party provide much guidance about how or why a ruling under FRCP 52 is appropriate or inappropriate at this juncture of the case. FRCP 52 (a) talks about actions "tried on the facts without a jury or with an advisory jury," Section (b) refers to "a party's motion filed no later than 10 days after the entry of judgment," and Section (c) is concerned

**ORD ON MTN FOR SUMMARY JMT - 4**

with the situation where "a party has been fully heard on an issue during a nonjury trial." This matter is not yet before this Court as a nonjury trial, nor has judgment been entered.

The primary difference between considering this motion under FRCP 52 or FRCP 56 is that a Rule 52 motion would permit the Court to weigh the evidence. However, the Administrative Record submitted in conjunction with this litigation exists as a body of undisputed facts (although the conclusions to be drawn from those facts are definitely in dispute) and the Court believes that, as there are no genuine issues of disputed fact in this litigation and (as discussed *infra*) the decision of the Plan administrator is entitled to deference, there is no need to weigh the facts and the motion may be decided as a matter of law. On that basis, this motion will be denied under Rule 52 and treated as a Rule 56 motion for summary judgment.

Rule 56 Motion

Even though the decision has been made to consider this motion under FRCP 56, the Court is mindful of the language of the Ninth Circuit in Bendixen v. Standard Insurance Co., 185 F.3d 939 (9th Cir. 1999):

> Where the decision to grant or deny [ERISA] benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Id. at 942. As will become apparent, it is the opinion of this Court that "abuse of discretion" is the proper standard of review in this matter, and on that basis the Court will decide the legal question of whether discretion has been abused.

***Abuse of discretion or de novo review: the conflict of interest issue***

There is agreement between the parties that the LTD Plan conferred discretionary authority upon the plan administrator to determine eligibility for benefits. AR 00970; Def. Mtn, p. 5; Plaintiff

**ORD ON MTN FOR SUMMARY JMT - 5**

Response, p. 4.² This takes the benefits denial at issue out of the realm of *de novo* review and mandates that the Court consider these issues from an "abuse of discretion" standpoint. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2007).

However, this is the beginning, not the end, of the inquiry which is to be made in these types of cases – the question of the *degree* of deference to be accorded the administrator's decision must be answered, and the answer may be that so little deference is accorded to the decision (based on a number of factors discussed *infra*) that the analysis returns full-circle to *de novo* review. The first area of inquiry is whether, and to what extent, the administrator is operating under a conflict of interest.

Again, there is no disagreement between the parties that Defendant Unum is operating under a "structural" conflict of interest, which exists whenever the same organization responsible for determining eligibility for benefits is also responsible for paying out those benefits. A reviewing court must always consider "the inherent conflict which exists when a plan administrator both administers the plan and funds it." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 967 (9th Cir. 2006).

The existence of a conflict of interest must be "weighed as *a* factor in determining whether there is an abuse of discretion." Firestone, 489 U.S. at 115 (emphasis supplied); see also, Metropolitan Life Insurance Company v. Glenn, 128 S.Ct. 2343, 2351 (2008) ("conflicts are but one factor among many that a reviewing judge must take into account."). Not only is "conflict of interest" only one factor to be considered, but it will be "weighted" as more or less serious depending on a number of other factors.

---

² Plaintiff claims that the absence in the record of either "the ERISA plan or the Certificates provided [Unum's] insureds" calls into question whether the grant of discretionary authority contained in the LTD Plan might have been somehow countermanded in another document. Plaintiff Resp., p. 4. This is a highly speculative, unpersuasive argument. Neither of these documents is present in the AR, a voluminous aggregation of documents which Plaintiff has had the opportunity to supplement since the onset of her application and appeals process in 2001. Presumably, the "Certificate[] provided. . . insureds" was a document within her possession which she could have produced as easily as Defendants.

**ORD ON MTN FOR SUMMARY JMT - 6**

> We "weigh" such a conflict more or less "heavily" depending on what other evidence is available. [Abatie, 458 F.3d] at 968. We "view[ ]" the conflict with a "low" "level of skepticism" if there's not evidence "of malice, of self-dealing, or of a parsimonious claims granting history." Id. But we may "weigh" the conflict "more heavily" if there's evidence that the administrator has given "inconsistent reasons for denial," has failed "adequately to investigate a claim or ask the plaintiff for necessary evidence," or has "repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly." Id.

Saffon, 522 F.3d at 868. The Met Life court, likewise, considered "a history of biased claims administration" to be a circumstance which suggested "a higher likelihood that [the conflict] affected the benefits decision." Met Life, 128 S.Ct. at 2351.

Plaintiff has submitted a number of documents which she argues are relevant on the issue of conflict of interest. Decl. of Krafchick, Ex's A - T. For the most part, Unum has interposed no objections to the exhibits (many of them, in fact, are already in the AR and presumably Plaintiff filed them as separate exhibits for ease of access). However, there are several exhibits (Ex's K - O) to which Defendant does object on a number of grounds. The Court finds Unum's objections only partially compelling.

"The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent and effect on the decision-making process of any conflict of interest..." Abatie, 458 F.3d at 970. While acknowledging that there is Ninth Circuit precedent for considering material extrinsic to the record, Defendant asserts that there are no grounds here for making any exception to the general rule that the Court should not consider documents outside of the administrative record in reviewing an ERISA benefits decision under the abuse of discretion standard. Def Reply, p. 3.

The Court disagrees. A "history of biased claims administration" is one of the premier factors in weighting the extent of a conflict of interest and at least three of the disputed exhibits are concerned with exactly such a history on Defendant's part. A law review article by John Langbein (Trust Law As Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials Under

**ORD ON MTN FOR SUMMARY JMT - 7**

ERISA, 101 NW U.L.Rev. 1315 (2007); Ex. N) contains a lengthy recitation of the administrative abuses of Unum and other insurance companies. However, Plaintiff has failed to propose any exception to the hearsay rule under which this data-intensive out-of-court statement might be accepted as factual proof of the matter for which it is offered. Plaintiff asserted at oral argument that the fact that the article has been cited in a Ninth Circuit and a Supreme Court opinion (Saffon and Met Life, respectively) should suffice for this Court, but the fact that neither of those cases involved Unum as a defendant and that the opinions cited the article for illustrative (as opposed to probative) purposes renders Plaintiff's argument unpersuasive.

Exhibits L and M are the Regulatory Settlement Agreement with the Department of Labor ("RSA," which resulted in the reassessment of Plaintiff's claim in 2006) and the "report on the targeted multistate market conduct examination" of Unum and other insurance companies which accompanied the RSA (presumably – Plaintiff provided the document without explanation), since the documents bear the same date. Exhibit M, the multistate market report, suffers from the same deficiency as the Langbein article in that it is an out-of-court statement offered for the truth of the matter asserted with no supporting argument concerning a pertinent exception to the hearsay rule which might permit the court to consider it as evidence.

The RSA is another matter. It is signed by an agent – the President and CEO – of Unum (which has not disputed its authenticity in this proceeding), and is thus admissible as the admission of a party opponent. FRE 803(d)(3). However, the document is of limited probative value. By its own terms, it restricts the admissions or inference of wrongdoing which might be drawn from its contents:

> 11. Neither this Agreement nor any related negotiations, statements or court proceedings shall be offered by the Company, the Lead Regulator, the DOL or the Participating Regulators as evidence of or an admission, denial or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Company. . .

\*\*\*\*

**ORD ON MTN FOR SUMMARY JMT - 8**

> 12. The Company does not admit, deny or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it. . .

RSA, Ex. L, ¶¶ 11 and 12. Furthermore, FRE 408(a) states generally that settlement agreements are not admissible as evidence of liability. Nevertheless, the Court does find the document admissible and relevant to the extent that it demonstrates that concerns have historically raised about Unum's claims-handling practice.

However, the Court is also aware that, following the execution of this agreement, Unum complied with its terms by offering a reassessment to Plaintiff. In other words, the final review which her claim received was part of a process undertaken by the company to redress the problems which are identified in the RSA. This undercuts the impact of the "parsimonious claims-granting history" which the document chronicles. It does not eliminate that impact altogether, though. While the RSA is certainly not sufficient by itself to create a presumption of conflict so egregious that it eliminates all deference due to the administrator, the Court will apply a more elevated level of skepticism than a simple "structural" conflict of interest would warrant.

There are two other Plaintiff's exhibits challenged by Defendant. Exhibit K is a declaration by attorney Corrie Yackulic, and reports the results of an October 9, 2008 Social Security disability hearing at which the judge hearing the matter issued a finding of total disability based on Plaintiff's psychological condition. Although the Court finds this document inadmissible on the grounds that it concerns a finding made at a time well after the time period under consideration here, to the extent that it has any probative value it would appear to support Unum's reassessment evaluation granting Plaintiff two years of psychiatric disability payments. That observation aside, the relevant time period for purposes of this litigation is the condition of Plaintiff in January of 2001 when the question of her

disability under the "any occupation" portion of the LTD Plan had to be answered.[3]  A finding of disability made in October 2008 is irrelevant for purposes of this action.

Plaintiff also submitted, as Exhibit O, the "Event Brief of Q1 2008 Unum Group Earnings Conference Call - Final." The document is never referenced in Plaintiff's pleadings, nor did Plaintiff's counsel offer any explanation of its relevance at oral argument. The Court simply did not consider it in arriving at this decision.

In conclusion, the Court has considered portions of the extrinsic evidence submitted by Plaintiff on the issue of the extent and effect of Unum's conflict of interest. The evidence which is admissible is sufficient to raise the level of skepticism with which the Court will view Defendant's determination above the minimal level that a "structural" conflict of interest would provoke, but not so heavy as to eliminate all deference due under the "abuse of discretion" standard, or outweigh any other factor which the Court can consider. The conflict thus becomes simply one factor to be weighed in the abuse of discretion analysis, which is conducted in the following section.

*Abuse of discretion review – the decision on the merits*

The Court is mindful of the admonition in Abatie that "the decision on the merits. . . must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." 458 F.3d ast 970. The remainder of this analysis will be devoted to determining, based solely on the evidence contained in the AR, whether the administrator abused its discretion in refusing to award Plaintiff disability benefits based on her medical condition.

There is considerable guidance in recent cases concerning the nature of the factors to be considered. Factors listed by the Supreme Court in deciding whether the administrator abused its

---

[3] Plaintiff's counsel asserted at oral argument that, in light of the 24 months of psychiatric disability payments that Plaintiff was granted retroactively by Unum, the relevant period for consideration of her total medical disability should be shifted to January 2003. The Court finds no support in the record, in the regulations or in case law for this position; both sides agreed at oral argument that a finding of psychiatric disability would not preclude a simultaneous finding and award of disability on the basis of a physical/medical condition.

**ORD ON MTN FOR SUMMARY JMT - 10**

discretion include (1) a conflicting determination in a Social Security disability proceeding, (2) a decision which focuses on the conclusion of a single physician to the exclusion of other opinions and (3) a failure to provide the reports of a claimant's treating physicians to the plan's medical experts. Met Life, 128 S.Ct. at 2351. The Ninth Circuit list of considerations in assessing whether discretion has been abused also includes: (1) inconsistent reasons for denial, (2) failure to adequately investigate a claim or ask the claimant for necessary evidence, (3) failure to credit a claimant's reliable evidence, (4) repeated denials to deserving participants based on incorrect interpretations of claim terms or making decisions against the weight of the evidence, (5) evidence of malice and (6) "wholesale and flagrant" violations of ERISA procedural requirements. Abatie, 458 F.3d at 968-69, 971.

Plaintiff cites more or less all of these considerations in arguing that Unum's decision-making process was so flawed that it deserves no deference whatsoever. The remainder of this opinion will address Plaintiff's arguments as they appear in her briefing.

*1. Defendant "disregard[ed]... Plaintiff's credible evidence without providing a good reason for dismissing the evidence. (Resp., p. 17)*

In her RSA submission, Plaintiff included reports from treating physicians who concluded (1) that she was in fact disabled and (2) that the previous examinations had been inadequate and the conclusions drawn from them highly suspect. Plaintiff devotes a good deal of her responsive briefing to outlining the results of those examinations and alleging that Defendant's failure to either accord them sufficient weight or explain why it did not do so constitutes an abuse of discretion.

The evidence does not support the assertion that the plan administrator "disregarded" Plaintiff's evidence, only that Plaintiff's evidence was not considered sufficiently compelling to overturn the conclusion of the medical experts utilized by Defendant as well as the weight of the other evidence. It is clear from Defendant's RSA denial letter that Unum's experts reviewed Plaintiff's evidence:

> In reassessing [Plaintiff's] claim, we. . . reviewed *all the information and material you submitted*. This also included our review of the additional information and material we

**ORD ON MTN FOR**
**SUMMARY JMT - 11**

received during our review. . . We also asked our medical department to review all the medical information in your client's claim file. AR 02309 (emphasis supplied).

Therefore the Court does not find that the evidence of Plaintiff's experts was "disregarded." The evidence was simply not ultimately persuasive. Plaintiff's further argument that Unum's failure to articulate <u>why</u> her evidence failed to persuade finds no support in statutory or case authority. Contrary to the implication in Plaintiff's briefing, there is no requirement in ERISA that the administrator explain its reasons for not crediting Plaintiff's evidence or her experts' conclusions. The regulations require that the claimant be provided "[t]he specific reason or reasons for the denial" (29 CFR 2560.503-1(f)(1) & (h)(3)), but nowhere does the statute say that the reasons for overruling or rejecting a claimant's evidence must be set forth. Each of Defendant's denial letters states the reasons why the administrator was not persuaded to award Plaintiff total medical disability, and that is sufficient.

Plaintiff makes much of the fact that some of the materials submitted during the course of her appeals process were from treating physicians. There is Supreme Court precedent holding that "[n]othing in [ERISA] itself... suggests that plan administrators must accord special deference to the opinions of treating physicians. . . nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831, 834, 123 S.Ct. 1965 (2003). The existence of treating physicians' opinions does not alter the absence in the ERISA scheme of any requirement of explanation for reasons for rejection of certain evidence. Unum is not required to provide "a good reason for dismissing [Plaintiff's] evidence" and its failure to do so is not evidence of a bias or conflict.

Additionally, the new evidence in Plaintiff's RSA submission consisted of medical examinations and evaluations conducted five years after her original claims for long-term disability. The issue at every stage of Plaintiff's attempt to be declared disabled under the LTD Plan (including the 2006 RSA reassessment) was not whether Plaintiff was disabled in 2006, but whether (as discussed *supra*)

**ORD ON MTN FOR SUMMARY JMT - 12**

Defendant was correct in rejecting her disability claim in 2001. Defendant is entitled to discount evidence generated five years after the effective date of Plaintiff's claim, and the Court does not find that fact probative on the issue of whether it abused its grant of discretionary authority.

2. *Lack of a "full and fair review" or "meaningful dialogue" (Resp., p. 18, 22)*

There is indeed a requirement for a "full and fair review" in the ERISA regulations (29 CFR 2560.503.1(g)) and case law which calls for a "meaningful dialogue between ERISA plan administrators and their beneficiaries." Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). There is, however, no statutory definition of what constitutes a "full and fair review" and the thrust of the case law suggests that a claimant has received a full and fair review where there are no flagrant procedural irregularities (minor irregularities are not fatal; see Abatie, 458 F.3d at 972) and nothing in the circumstances of the review that suggests such a significant conflict of interest or evidence of bias that deference is inappropriate. See Booton, *supra*; Abatie, *supra*; Met Life v. Glenn, *supra*; Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863 (9th Cir. 2008). Plaintiff articulates no flagrant breaches of ERISA procedure other than her claim that she did not receive a "full and fair review," and the Court finds none.

The "meaningful dialogue" requirement arose in Booton: "In simple English, what [ERISA] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries." 110 F.3d at 1463. The Booton court went on to list the component elements: a statement indicating the reasons for the denial "in reasonably clear language, with specific reference to the plan provisions" that form the basis for the denial; "if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." Id. (emphasis supplied) Presumably, if there is no other information the administrators believe they require, there is no requirement to ask for any.

Outside of the objections that Plaintiff articulates to Unum's process and conclusions, she points to no additional facts in support of this claim of "no meaningful dialogue." Analyzing within the

**ORD ON MTN FOR SUMMARY JMT - 13**

context of the Booton holding, the Court does not find the Unum failed to offer a "meaningful dialogue" with this claimant. In every denial the administrator provided Plaintiff with the reasons for the denial and the plan provisions under which Plaintiff had failed to qualify. Plaintiff does not argue that she could not understand the contents of the denial letters. At every juncture of her appeal, she was invited to submit whatever supporting evidence she had; in fact, following the first denial of her appeal from the original determination of ineligibility, Plaintiff was permitted to submit additional material for a second appeal. The fact that any of the denial letters may not have requested further information from Plaintiff is not fatal; Defendant was only required to ask for more information if it believed it needed it. Since on one occasion the administrator did permit Plaintiff to submit additional material following the denial, it is reasonable to assume that on those occasions when Unum did not request additional information it was because none was believed to be needed.

*3. ". . . UNUM made their RSA decision without the benefit of the decision from SSD (Social Security Disability) on Ms. Bartholomew's pending SSD claim." (Resp., p. 18)*

While there is case authority that issuing a decision inconsistent with an existing SSA determination is evidence of conflict and bias (Met Life, 128 S.Ct. at 2347), Plaintiff cites no authority that failing to delay a decision to await the results of a *pending* SSA claim is evidence of a conflict or bias in the process. The Court is aware of the language in the RSA requiring the plan administrator to "give significant weight to evidence of an award of Social Security disability benefits" (Ex. L, ¶ 3, p. 12), but reads this language to refer to SSD awards made at the relevant time period for the disability application (here, January 2001). Defendant's original rejection of Plaintiff's claim was in fact consistent with a rejection of her Social Security disability application at that time. AR 01349-1358, 01967. The fact that a decision regarding an SSD request for a disability finding in 2007 was pending at the time the reassessment evaluation was being completed is outside the scope of the RSA and not relevant for purposes of this Court's determination.

**ORD ON MTN FOR SUMMARY JMT - 14**

Even though there was no requirement that the plan administrators postpone a reassessment decision because a contemporaneous SSD application is in process, what Plaintiff characterizes as a favorable SSD result after the RSA decision is, as Defendant points out, actually consistent with the result that Defendant reached; i.e., the SSA award was for a *psychological* disability, not the medical disability which Plaintiff claimed from her employer and which was repeatedly rejected. Plaintiff, Ex. K. Based on Defendant's award of a psychiatric disability to Plaintiff, this evidence (if the Court were in fact to consider it) would seem to support Defendant's decision, not undermine it.

*4. Defendant's insufficient or inconsistent bases for decision: "Prong 3"*

Plaintiff attacks Defendant's process for its failure to consider Plaintiff's disability application under "Prong 3" of the LTD Plan, the "Partial Disability Provision" which provides:

> 3. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
>    a. performing at least one of the material duties of his regular occupation or another occupation on a parti0-time or full-time basis; and
>    b. earning currently at least 20% less per month than his indexed pre-disability earning due to the same injury or sickness.

The Court notes that this is apparently the first time that Plaintiff has raised this argument, and Plaintiff's counsel conceded at oral argument that Plaintiff had never actually requested that her application for disability be considered under this section of the LTD Plan. It does not appear from the record that she provided any proof relevant to a claim under "Prong 3." Plaintiff's counsel cited no case support for his argument that Unum is obligated as a fiduciary to consider every possible option under their disability plan whether the claimant requests it or not. The Court does not find the argument persuasive.

Defendant responded to this argument by pointing out that "the fact that Plaintiff may have worked only part-time in spurts does not belie the fact that Unum concluded that Plaintiff was at all times capable of *full-time* sedentary work. If anything, Plaintiff's part-time work only supports the argument that she was capable of full-time sedentary work." Reply, p. 7, fn. 5 (emphasis in original).

**ORD ON MTN FOR SUMMARY JMT - 15**

The Court agrees that, having determined that Plaintiff was capable of full-time sedentary work, Defendant was not under an obligation to consider whether she was eligible for a part-time disability.

*5. The RSA review added new reasons for denying the claim without allowing Plaintiff an opportunity to rebut the new reasons (Resp., p. 21)*

Plaintiff attempts through this argument to take advantage of language in Abatie and Saffon[4] which treats very harshly any previously unarticulated grounds for denial which appear after a claimant has filed a response. Plaintiff argues that, in finding evidence for the first time to award her disability on mental grounds, Defendant added a "new reason for denial" of Plaintiff's claim for disability on physical grounds.

This is not a compelling argument. Nowhere in the RSA denial letter does Defendant state "we are denying your claim for physical disability because we are finding you psychologically disabled instead." Indeed, because the limitation terms and conditions are different for both kinds of disability, there is no reason (as counsel for both sides agreed at oral argument) that an administrator could not find a claimant disabled on mental and physical/medical grounds. Plaintiff articulates no reasoning as to how or why the two are mutually exclusive, or how she concludes from Defendant's language that the finding of mental disability is in fact a ground for denying her medical disability claim.

*Conclusion: No abuse of discretion*

Plaintiff has produced neither the quantum of evidence nor the weight of legal authority to transform this standard of review from "abuse of discretion" to *de novo*. The Court does not need to agree with Defendant's position that they took "every step possible" to provide a full, fair and balanced review of Plaintiff's claim (Reply, p. 8) to find that the review they provided her was extensive, thorough and appears intended to give her the maximum opportunity to present her case. There is

---

[4] "[A]n administrator that adds, in its final decision, a new reason for denial. . . contravenes the purpose of ERISA. This procedural violation must be weighed by the district court in deciding whether [the administrator] abused its discretion." Abatie, 458 F.3d at 974; see also Saffon, 522 F.3d at 872.

**ORD ON MTN FOR SUMMARY JMT - 16**

evidence (Defendant's claims-granting history, Dr. Becker's criticism of the FCE, the findings of some of Plaintiff's other medical experts) which lends enough weight to the conflict of interest/abuse of discretion question that the Court reviewed Unum's proffered rationale for their decision with a degree of skepticism. In the final analysis, however, the Court finds nothing about the process which Plaintiff received which was so egregious, so flagrantly unfair, one-sided and biased that Defendant's decision could rightfully be called an abuse of discretion, entitled to no deference whatsoever. The Court, therefore, reviews Unum's actions under an "abuse of discretion" standard.

Under an "abuse of discretion" standard of review, Defendant prevails. This standard requires that the Court uphold the administrator's decision "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Estate of Shockley v. Alyeska Pipeline Ser. Co., 130 F.3d 403, 405 (9th Cir. 1997) (internal quotations omitted). Both of those conditions are met here. Unum did not misinterpret the terms of their LTD Plan, afforded Plaintiff the "full and fair review" of her claims and her evidence required by ERISA, and had an abundance of evidence favoring their determination. The presence of contradictory evidence does not entitle Plaintiff to a finding of abuse of discretion (see Taft v. Equitable Life Assurance Soc., 9 F.3d 1469, 1473: " In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion."). Defendant is entitled to summary judgment and the Court will enter an order dismissing of Plaintiff's action with prejudice.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: November _26__, 2008

_Marsha J. Pechman_
Marsha J. Pechman
U.S. District Judge

**ORD ON MTN FOR SUMMARY JMT - 17**